UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORY ARMSTRONG,<br><br>    Plaintiff,<br><br>    v.<br><br>BAUER'S INTELLIGENT TRANSPORTATION, INC.,<br><br>    Defendant. | Case No. 13-cv-02691-MMC   (MEJ)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 41 |

## INTRODUCTION

Plaintiff Rory Armstrong, a Chauffeur with Defendant Bauer's Intelligent Transportation, Inc., brings this putative class action on behalf of current and former Bauer's Chauffeurs. The parties current dispute concerns whether Bauer's should be compelled to produce all route sheets in an unredacted form, for all corporate shuttle work performed during the class period, which is March 29, 2009 and onwards (the "Route Sheets"). Jt. Ltr., Dkt. No. 41.

## BACKGROUND

Bauer's is a private company that provides transportation services for corporate clients. *Id.* at 2. Armstrong sues on his own behalf and also seeks to represent other individuals currently or formerly employed by Bauer's as Chauffeurs at any time from March 29, 2009 onwards (collectively, "Chauffeurs"), alleging that Bauer's has engaged in an unlawful pattern and practice of failing to: (a) provide rest breaks; and (b) pay its Chauffeurs for all compensable work time, including the minimum wage, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; the California Labor Code; California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California Industrial Welfare Commission Order No. 9-2001; and the San Francisco Administrative Code. *Id.* at 2.

1   On January 27, 2014, Bauer's produced route sheets relating to all routes driven by
2   Armstrong. *Id.* Bauer's also agreed to produce a sample of redacted route sheets showing the
3   routes driven by the other putative class/collective members. *Id.* The produced route sheets
4   included all of the following information: the "Punch In" and "Punch Out" time of each shift, the
5   "Pick up time" at each stop, the "Total Drive Time," the "Non-Driving Post-Trip" time, the "Total
6   hours for this route," as well as the "Company Discretionary Bonus Pay." *Id.* Armstrong now
7   requests that the Court order Bauer's to produce all the Route Sheets in an unredacted form.

## DISCUSSION

9   Armstrong argues that the Route Sheets are relevant to his claims that Bauer's fails to
10  compensate Chauffeurs for all compensable time and fails to provide Chauffeurs with rest breaks
11  as required by Wage Order No. 9. *Id.* at 3. Although Bauer's produced a redacted sample for a
12  subset of its corporate clients, Armstrong maintains that this production is deficient because
13  Bauer's has not produced all Route Sheets for all clients. *Id.*
14  With respect to the sampling of Route Sheets Bauer's produced, Armstrong argues that the
15  redaction of all stop location information and all client names is problematic because that
16  information provides the identity of the drop off/pick-up locations throughout the entire route, and
17  such locations can only be discerned with the client information because oftentimes such location
18  is identified by a building on the client's property. *Id.* Thus, Armstrong argues that Bauer's is
19  withholding evidence that shows: (1) the inaccuracy of the time allotments Bauer's gives its
20  Chauffeurs to get from Point A to Point B, because the locations are redacted; (2) Chauffeurs do
21  not arrive at the listed locations at the specified times, because the drop off/pick up locations are
22  redacted; (3) Chauffeurs were forced to spend their split shift in remote areas with no public
23  transportation options and as a result were not free to engage in personal activities, which is
24  central to Armstrong's split shift waiting time claim, because the drop off/pick up locations and
25  client information is redacted; and (4) Bauer's does not provide rest breaks as required by law
26  because the drop off/pick up locations and/or layover locations were not amenable to taking a
27  break. *Id.*
28  Armstrong further argues that, because Bauer's has redacted client information, he is

compromised in his ability to: (1) obtain full and complete testimony from Chauffeurs because they lack documentary evidence that would refresh memory and allow them to identify with specificity which routes they worked; and (2) identify, investigate, or subpoena Bauer's clients, who are likely to have relevant information about the actual departure and arrival times of the buses. *Id.*

Finally, Armstrong argues that the unredacted Route Sheets are also relevant to his anticipated motion for class certification, as they would have the tendency to show common policies and practices of Bauer's and common application of those policies and practices to all Chauffeurs. *Id.* For example, Armstrong maintains that the Route Sheets would show that Bauer's systematically undercompensates Chauffeurs for the routes that they drive and systematically fails to provide rest breaks as required by law. *Id.*

In response, Bauer's argues that the Court should deny Armstrong's request as it constitutes improper classwide discovery prior to a resolution of Armstrong's pending motion to conditionally certify a class. *Id.* at 5. Separately, Bauer's argues that Armstrong has failed to articulate why the names of its clients or the pick-up/drop-off locations are relevant to his claims, because locations add nothing to an evaluation of whether Chauffeurs have time for rest breaks – the times of the stops are the relevant information. *Id.* Bauer's further argues that there are compelling justifications for keeping the client names and specific San Francisco locations confidential, including recent (and likely future) demonstrations at shuttle bus stops in San Francisco and a pending lawsuit challenging the right of Bauer's to stop at specific San Francisco locations. *Id.*

**A.     Legal Standard**

Prior to class certification under Federal Rule of Civil Procedure 23, discovery lies entirely within the discretion of the Court. *Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 942 (9th Cir. 2009) ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted."). The plaintiff has the burden either to make a prima facie showing that the Rule 23 class action requirements are satisfied, or to show "that discovery is likely to produce substantiation of the

3

class allegations." *Manolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). To deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citing *Kamm*, 509 F.2d at 210). "The better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Id.*

Pursuant to Rule 23, a member of a class may sue on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

**B.     Application to the Case at Bar**

   1.     <u>Class Certification</u>

Here, the Court finds that Armstrong is able to establish a prima facie case. As to the first element under Rule 23, a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (citation omitted). Here, potentially over 450 individuals are similarly situated to Armstrong. Mot. for Approval of *Hoffman-La Roche* Notice, Dkt. No. 31, at 3. Thus, the numerosity requirement is satisfied.

Rule 23(a) also demands "questions of law or fact common to the class." This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable

4

of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). As summarized by the Supreme Court:

> What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009)). In this case, there are discrete factual and legal issues common to the proposed class that, when answered, appear to be dispositive of the entire litigation. Armstrong alleges that Bauer's does not pay Chauffeurs for: (1) post-trip inspection time; (2) turn-in time; (3) mandatory meeting time; (4) medical examination time; and (5) split-shift waiting time. Mot. for Approval of *Hoffman-La Roche* Notice at 5-7. The Court finds that these allegations meet the standard of commonality, as their resolution will generate common answers apt to drive resolution of the litigation.

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation and internal quotation marks omitted). Here, as discussed above, Armstrong alleges that the putative class members were subjected to the same violations of their rights, and he seeks the same types of damages, penalties, and other relief on the same theories and legal grounds as the members of the class he seeks to represent. Compl. at 18-20, Dkt. No. 1. While these claims might require different calculations for each class member if proven true, for purposes of establishing a prima facie case at this early stage in the litigation, Armstrong's allegations meet the typicality requirement.

5

The final requirement of Rule 23(a) is adequacy. Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is grounded in constitutional due process concerns; "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate–California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975).

Here, there is no indication that Armstrong is an inadequate representative. Bauer's arguments in the Joint Letter go to the merits of the case and the relevancy of the Route Sheets. However, the Court is not prepared to address such arguments at this early stage in the litigation. Instead, the Court must afford Plaintiff an opportunity to present evidence as to whether a class action was maintainable, enough discovery to obtain such evidence. *Doninger*, 564 F.2d at 1313 (citation omitted). Addressing the two questions posed, the Court finds no evidence at this stage in the litigation that (1) Armstrong and his counsel have any conflicts of interest with other class members, and (2) Armstrong and his counsel will not prosecute the action vigorously on behalf of the class. Accordingly, Armstrong has satisfied the adequacy requirement.

Based on this analysis, the Court finds that the prima facie requirement is satisfied, and it must now determine whether discovery will likely provide Armstrong an opportunity to present evidence as to whether a class action is maintainable.

### 2. The Route Sheets

Turning to the Route Sheets, the Court finds that Armstrong has shown that the Route Sheets are relevant to his claims that Bauer's fails to compensate Chauffeurs for all compensable time and fails to provide Chauffeurs with rest breaks. Rule 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

1   Fed. R. Civ. P. 26(b).  The relevant information "need not be admissible at trial if the discovery
2   appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Relevance
3   under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary
4   boundaries."  *Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  Armstrong has
5   shown that the stop location information is relevant to show the time allotments to get from Point
6   A to Point B, whether Chauffeurs arrive at the listed locations at the specified times, whether
7   Chauffeurs spent their split shifts in remote areas with no public transportation options, and
8   whether Bauer's provides rest breaks.  *Id.*

9         As to Bauer's confidentiality argument regarding client names, courts do recognize a
10  general right to privacy.  *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("When the
11  constitutional right of privacy is involved, 'the party seeking discovery must demonstrate a
12  compelling need for discovery, and that compelling need must be so strong as to outweigh the
13  privacy right when these two competing interests are carefully balanced.'" (quoting *Wiegele v.*
14  *Fedex Ground Package Sys.*, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007).  However, the
15  production of business addresses "does not implicate the same type of heightened concerns."
16  *Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, 2008 WL 901539, at *8 (N.D. Cal. Mar.
17  31, 2008).  Thus, the Court finds that production of the Route Sheets does not implicate privacy
18  concerns to the extent that business addresses are disclosed.

19        As to client names, while Armstrong has shown the potential relevance of specific pick
20  up/drop off locations based on the accuracy of time allotments, he has not shown that this
21  information cannot be obtained without disclosure of client names.  Armstrong argues that some
22  locations can only be discerned with the client information because oftentimes such location is
23  identified by a building on the client's property.  Jt. Ltr. at 3.  In such a case, the parties can meet
24  and confer to determine a more precise geographic location when needed.  Armstrong also argues
25  that the client names are necessary to identify, investigate, or subpoena Bauer's clients, who are
26  likely to have relevant information about the actual departure and arrival times of the buses.  *Id.* at
27  3.  However, the Court finds such discovery unwarranted prior to class certification.
28        Based on this analysis, the Court finds it appropriate to order production of Route Sheets

United States District Court
Northern District of California

for all corporate transit work performed during the period from March 29, 2009 onwards. Recognizing Bauer's request that the Court order Armstrong to bear at least part of the burden associated with collection and production of the sought documents, the Court finds it appropriate to limit production to a representative sample.

## CONCLUSION

Based on the foregoing, the Court ORDERS Bauer's to produce a representative sample of Route Sheets for all corporate transit work performed during the period from March 29, 2009 onwards. The parties shall meet and confer in person for the purpose of determining a reasonable sampling. The parties shall also meet and confer for the purpose of crafting a protective order regarding disclosure of the Route Sheets. If unable to reach an agreement, the parties shall file a joint letter, in compliance with the undersigned's Discovery Standing Order, by June 23, 2014. If Bauer's chooses to redact client names despite the protective order; it must be prepared to meet and confer with Plaintiff and provide more specific geographic information for any entries that do not permit Armstrong to determine a pick up/drop off location based on the information provided.

**IT IS SO ORDERED.**

Dated: June 10, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge