THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California  94704
Telephone:  (510) 788-5100
Facsimile:  (510) 291-3226
E-mail:      sgt@tidricklaw.com
E-mail:      jby@tidricklaw.com

Attorneys for Individual and Representative
Plaintiff RORY ARMSTRONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RORY ARMSTRONG, on behalf of himself
and all others similarly situated,

                    Plaintiff,

          v.

BAUER'S INTELLIGENT
TRANSPORTATION, INC.; and DOES 1-50,

                    Defendants.

Civil Case Number: 3:13-cv-02691-MMC

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Date:        May 22, 2015
Time:        9:00 A.M.
Courtroom:  7, 19th Floor, San Francisco

The Honorable Maxine M. Chesney

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

I.      INTRODUCTION AND SUMMARY ............................................................. 2

II.     NATURE OF THE CASE AND PROCEDURAL HISTORY .............................. 3

        A.  Plaintiff's Position ................................................................................. 3

        B.  Defendant's Position .............................................................................. 4

        C.  Procedural History ................................................................................. 4

            1.  Litigation Conducted Prior to Mediation ................................... 4

            2.  Mediation Sessions and Agreement to Class Settlement ............ 4

III.    KEY TERMS OF PROPOSED CLASS SETTLEMENT ................................... 4

        A.  One Hundred Fifty Thousand Dollar ($150,000) Settlement .............. 5

        B.  Allocation of Settlement Funds ............................................................ 5

            1.  Releases of Claims in Exchange for Settlement Payments .......... 5

            2.  Proposed *Cy Pres* Recipients and Disbursement Limitations ...... 6

        C.  Class Notice; Proposed Procedures for Providing Notice and for Class Members' Responses .......................................................... 7

        D.  Proposed Procedures for Final Approval of Settlement ..................... 8

IV.     LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT ................................. 9

        A.  Class Claims Settled Under Rule 23 ..................................................... 9

            1.  Criteria .......................................................................................... 9

            2.  Procedure ...................................................................................... 9

        B.  Standards for Class Settlement of FLSA Claims ................................ 10

V.      THE COURT SHOULD CERTIFY THE PROPOSED COLLECTIVE/CLASS FOR SETTLEMENT PURPOSES AND GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT CLASS .......................................................... 11

        A.  Conditional Certification of the Class for Settlement Purposes is Warranted .... 11

            1.  The Class and Subclass Satisfy Rule 23(a) and 23 (b)(3) .......... 11

i

a.   All four criteria of Rule 23(a) are met ............................................. 11

(1) The numerosity requirement is met.................................... 11

(2) The commonality requirement is met ................................. 11

(3) The typicality requirement is met ...................................... 12

(4) The adequacy requirement is met ...................................... 12

b.   The criteria of Rule 23(b)(3) are met ............................................. 13

(1) The predominance requirement is met.............................. 13

(2) The superiority requirement is met .................................... 14

2.   The FLSA Claims Warrant Certification as a Collective Action.................. 14

B.   The Proposed Settlement Is Fair, Reasonable, and Adequate............................ 15

1.   The Settlement Is Fair ................................................................... 15

a.   Fairness of distribution among class members ...................... 15

b.   Fairness of proposed attorneys' fees...................................... 16

c.   Fairness of proposed "enhancement" awards for Named Plaintiff......... 17

2.   The Settlement Is Reasonable ......................................................... 18

3.   The Settlement Is Adequate ........................................................... 20

4.   The Effect of Opt-Outs and *Cy Pres* Provisions Are Reasonable................. 21

5.   The Payment to the LWDA Is Reasonable ................................... 22

VI.   THE COURT SHOULD CONDITIONALLY APPROVE THE SETTLEMENT
AGREEMENT, RELATED FORMS, AND PROPOSED PROCEDURES FOR
PROVIDING NOTICE TO THE CLASS, AND SHOULD SET A FINAL
"FAIRNESS" HEARING AND BRIEFING SCHEDULE ..................................... 22

VII.   CONCLUSION .................................................................................. 23

ii

# TABLE OF AUTHORITIES

*Acosta v. Equifax Info. Servs. LLC,*
    243 F.R.D. 377 (C.D. Cal. 2007) ............................................................................ 16

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008) ................................................................ 10, 11, 12

*Baas v. Dollar Tree Stores, Inc.,*
    No. 07-3108, 2007 U.S. Dist. LEXIS 65979, (N.D. Cal. Aug. 29, 2007)................. 12

*City of Detroit* v. *Grinnell Corp.,*
    495 F .2d 448, 463 (2d Cir. 1974).......................................................................... 20

*Glass v. UBS Financial Services, Inc.,*
    No. C-06-4068 MMC, 2007 WL 474936, (N.D. Cal. Jan. 17, 2007) ...................... 21

*Hanlon* v. *Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)) .......................................................................... 10, 12

*Holden* v. *Burlington N., Inc.,*
    665 F. Supp. 1398 (D. Minn. 1987) ......................................................................... 1

*In re Activision Securities Litigation,*
    723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................. 17, 18

*In re Pacific Enterprises Securities Litigation,*
    47 F.3d 373 (9th Cir. 1994)................................................................................... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994).................................................................................. 17

*In re Wells Fargo Home Mortgage Overtime Pay Litig.,*
    527 F. Supp.2d 1053, (N.D. Cal. 2007) ............................................................ 13, 14

*Justice v. Civil Servo Comm'n,*
    688 F.2d 615 (9th Cir. 1982).................................................................................. 11

*Koehl* v. *Verio,*
    142 Cal. App. 4th 1313 (2006)............................................................................... 18

*League of Martin* v. *City of Milwaukee,*
    588 F. Supp. 1004 (E.D. Wis. 1984)....................................................................... 19

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir.)........................................................................... 14, 15, 20

iii

*Minor v. FedEx Office & Print Services, Inc.*, No.
    C09-1375 THE, 2013 WL 503268, (N.D. Cal. Feb. 8, 2013)...................................21

*Molski v. Gleich,*
    318 F.3d 937, (9th Cir. 2003)..................................................................16

*Navarro v. Servisair,*
    No. C09-02716 MHP, 2010 WL 1729538, (N.D. Cal. Apr. 27, 2010)....................21

*Nordstrom Commission Cases,*
    186 Cal. App. 4th 576 (2010)....................................................................22

*Officers for Justice v. Civil Service Commission of the City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982)...............................................................19, 20

*Quintero* v. *Mulberry Thai Silks, Inc.,*
    No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976,
    (N.D. Cal. Oct. 22, 2008)..........................................................................12

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990)...................................................................21

*Staton* v. *Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003).................................................................10, 13

*Stevens v. Safeway Inc.,*
    No. 05-1988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008)...................11

*Thorpe v. Abbott Labs., Inc.,*
    534 F. Supp.2d 1120, (N.D. Cal. 2008) ........................................................12

*Van Bronkhorst* v. *Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976).....................................................................20

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977)......................................................................17

*Wang v. Chinese Daily News, Inc.,*
    231 F.R.D. 602 (C.D. Cal. 2005) ...........................................................13, 15

*Young v. Katz,*
    447 F .2d 431 (5th Cir. 1971).....................................................................20

*Yue Zhou v. Wang's Rest.,*
    No. 05-279, 2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007)....................11

iv

**STATUTES**                                                                                  **PAGE(S)**

28 U.S.C. § 1715 ............................................................................................................   23

29 U.S.C. § 201 ..........................................................................................................   2, 3

29 U.S.C. § 216 ....................................................................................................... *passim*

California Industrial Wage Commission Wage Order 9-2001 ("IWC Order No. 9") ..........   2, 3

Federal Rule of Procedure Rule 23 ........................................................................ *passim*


**OTHER AUTHORITIES**                                                                         **PAGE(S)**

A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 2006)............   1, 18, 20

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) .............................................   10, 16,

## NOTICE OF MOTION AND MOTION

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 22, 2015, at 9:00AM or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney, United States District Court, Northern District of California, 450 Golden Gate Avenue, 19th Floor, Courtroom 7, in San Francisco, California, Plaintiffs will and hereby do move the Court, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23(c) and (e) of the Federal Rules of Civil Procedure ("Rule 23"), for the following Orders:

1.     Preliminary approval of the Parties' Proposed Joint Stipulation of Settlement and Release and the attachment thereto, entitled Notice of Class Action Settlement, filed April 10, 2015 ("Settlement Agreement") (Docket No. 57);

2.     Certification of the following Class and Collective Action for settlement purposes only pursuant to Federal Rules of Civil Procedure 23 and 29 U.S.C. § 216(b):  All current and former employees of Bauer's Intelligent Transportation, Inc. who worked in the State of California and were employed as a bus operator or in an equivalent position at any time within the Class Period, *i.e.*, the time period from March 29, 2009 through the Date of Preliminary Approval.

3.     Appointment of Plaintiffs' attorneys, Steven G. Tidrick, Esq. and Joel Young, Esq. of The Tidrick Law Firm as Class Counsel, and Plaintiff Rory Armstrong as the Class Representative;

4.     Appointment of Gilardi & Co. LLC as the settlement administrator, and an order directing the administrator to distribute to the class the notice pursuant to the procedures set forth in the terms of the Settlement Agreement.

5.     An order that the Opt-Out Deadline as proposed in the Settlement Agreement shall be 60 calendar days from the date the Notices are mailed, and that If the 60th day falls on a Sunday or holiday, the Opt Out Period shall end on the next business day that is not a Sunday or holiday.

6.     An order that the deadline for objections to final approval of the settlement shall

be fourteen (14) calendar days following the conclusion of the Opt Out Period;

7.    An order that the final approval hearing be set for a date approximately 125 days following the preliminary approval of the settlement agreement; and

8.    An order that the settlement is deemed filed as of the date of preliminary approval for purposes of providing notice to the appropriate officials pursuant to 28 U.S.C. § 1715.

DATED: April 17, 2015                    Respectfully submitted,

THE TIDRICK LAW FIRM

By:    /s/ Steven G. Tidrick
        _____
        STEVEN G. TIDRICK, SBN 224760

        Attorneys for Individual and Representative
        Plaintiff RORY ARMSTRONG

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY

In this unopposed motion, Plaintiff Rory Armstrong seeks certification of a class and collective action for settlement purposes, and preliminary approval of a proposed $150,000 class settlement with Defendant, Bauer's Intelligent Transportation, Inc. ("Defendant").  Plaintiff also seeks approval of the form of notice to the class, the proposed procedures and time frames regarding notice, requests for exclusion from potential class members, and objections. Further, Plaintiffs request that the Court set a date for a final approval hearing, along with related deadlines.

Through this motion, Plaintiff seeks the Court's approval to notify members of the class about the proposed settlement and move on to the final approval hearing.  Because the final approval hearing will provide the Court with another opportunity to review the settlement (after receiving the responses of class members), preliminary approval should be granted so long as the proposed settlement is "within the range of possible approval."  A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 2006) (quoting Manual for Complex Litigation

2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES - *Armstrong v. Bauer's Intelligent Transportation, Inc.*, Case No. 3:13-cv-02691-MMC

1
2
3

(Third) § 30.41 (1997)); *Holden v. Burlington N., Inc.,* 665 F. Supp. 1398, 1402 (D. Minn. 1987). That minimal evidentiary burden is met here.

4
5
6
7
8
9
10

The parties reached settlement through arm's-length bargaining with the assistance of both experienced counsel and a respected and experienced mediator, Mark Rudy, Esq.  The settlement will result in significant financial benefit to class members. The applicable notice clearly apprise class members of their rights to participate in, object to, or opt out of the settlement. There is no suggestion of anything other than good faith and fair dealing on all material issues related to the resolution of the action. Therefore, Plaintiff respectfully submits that the proposed settlement warrants preliminary approval and notice to the class.

11

## II. NATURE OF CASE AND PROCEDURAL HISTORY

12

### A. Plaintiff's Position

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On March 29, 2013, Plaintiff Rory Armstrong filed a lawsuit against Defendant in the Superior Court for the State of California, in and for the County of San Francisco, Case Number CGC-13-530147, and subsequently filed an amended complaint on May 13, 2013, alleging a variety of violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the California Labor Code, the California Business and Professions Code, the California Industrial Welfare Commission Order No. 9-2001, and the San Francisco Administrative Code, including: failure to pay wages, failure to provide meal and rest periods, failure to pay for all work time including examination time, turn-in time, inspection time, meeting time, gap time, and overtime, failure to pay minimum wages, failure to timely pay wages, during employment and following termination, failure to properly distribute gratuities, failure to provide accurate wage statements, failure to maintain accurate employment records, violation of Business And Professions Code § 17200, and claims under PAGA.  On or about June 11, 2013, Defendant filed an answer to the Complaint, denying all claims alleged therein. On or about June 12, 2013, Defendant removed the Action to the U.S. District Court for the Northern District of California, where it is presently assigned case number 3:13-cv-02691-MMC.  Plaintiff alleges in his Complaint that, during the applicable limitations period, Defendant failed to pay its California hourly employees all wages due, failed to provide meal and rest periods, failed to pay all work time including overtime, failed

3

to pay minimum wages, failed to timely pay wages during employment and following termination, failed to properly distribute gratuities, failed to provide accurate wage statements, and failed to maintain accurate employment records.

**B. Defendant's Position**

Defendant denies Plaintiff's claims. Defendant does not believe that any liability to Plaintiff or Class Members exists, or that Plaintiff or Class Members are entitled to any recovery. In addition, Defendant contends that Plaintiff's claims are not suitable for class or representative action treatment.

**C. Procedural History**

**1. Litigation Conducted Prior to Mediation**

The parties exchanged Rule 26 initial disclosures and exchanged substantial discovery, including copies of relevant employee handbooks and policies, and data and documents related to the size of the proposed class, the number, timing, and frequency of transportation services performed by Plaintiff and other members of the putative class, and the damages alleged against Defendant.   Defendant also provided Plaintiff with substantial information on the wage rates paid to Class Members, wage statements, and other documentation.

The Parties concur that sufficient discovery has been conducted to evaluate the strengths and weaknesses of their respective claims and defenses and to recommend this Settlement to the Class and the Court. (Declaration of Steven G. Tidrick, Esq. ("Tidrick Decl."), ¶ 14.)

**2.    Mediation Sessions and Agreement to Class Settlement**

The Parties first participated in mediation on February 6, 2014 with Richard S. Whitmore, an experienced mediator with nearly forty years' experience.  The mediation was not successful. Following the mediation, the Parties continued to develop and litigate their positions. Specifically, the parties contested conditional certification of a class from April to July 2014 (*See, inter alia,* Docket Nos. 31, 35, 36).  The Parties further disputed the scope of permissible discovery, which disputes were only resolved following judicial intervention.  (*See, e.g.,* Docket No. 48.)  In the course of and following these disputes and others, the Parties exchanged further information and arguments that allowed each side to re-evaluate and refine their respective positions.

On January 21, 2015, the Parties participated in a full-day mediation with respected class action mediator Mark S. Rudy, Esq. in San Francisco, California.  ("Tidrick Decl."), ¶ 6.)   No agreement was reached at the mediation to resolve the matter.  ("Tidrick Decl."), ¶ 6.)   However, in the weeks following the mediation, Mr. Rudy continued working with the Parties until the Parties agreed to the basic terms of a settlement on or about February 20, 2015. ("Tidrick Decl."), ¶ 6.)  Thereafter the Parties diligently albeit contentiously worked to draft a full settlement agreement.  All of the terms of the Parties' settlement are contained within the Joint Stipulation of Settlement and Release and the attachment thereto, entitled Notice of Class Action Settlement, filed April 10, 2015 ("Settlement Agreement") (Docket No. 57).  ("Tidrick Decl."), ¶ 13.)   At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length. ("Tidrick Decl."), ¶ 6.)

## III. KEY TERMS OF PROPOSED CLASS SETTLEMENT

### A.      One Hundred Fifty Thousand Dollar ($150,000) Settlement

The parties have reached agreement that Defendant shall pay an amount not to exceed One Hundred Fifty Thousand U.S. Dollars ($150,000) as the Maximum Settlement Amount to resolve the Action on a class-wide basis.  Settlement Agreement, at 8:5-7.  As described more fully below, netting out costs of administering the settlement, which have been estimated at $15,000, Plaintiffs' attorneys' fees of up to twenty five percent (25%) of the Maximum Settlement Amount, ($37,500) and reimbursement of reasonable litigation expenses not to exceed $12,000, a Service Enhancement Payment to the Class Representative in the gross amount of $4,000, and an allocation of payment for claims for penalties under the PAGA of $1,000, 75% of which shall be paid to the LWDA and 25% of which shall be paid to the Settlement Class members as part of the Net Settlement Amount, the Net Settlement Amount will be distributed to all Class Members who do not exclude themselves from the settlement.  Settlement Agreement, at 10:5-11:21.

The overall settlement class is as follows:

*All current and former employees of Bauer's Intelligent Transportation, Inc. who worked in the State of California and were employed as a bus operator or in an*

*equivalent position at any time within the Class Period, i.e., the time period from*

*March 29, 2009 through the Date of Preliminary Approval.*

Settlement Agreement, at 2:6-8, 3:24-25.

**B.      Allocation of Settlement Funds**

Settlement payments to Class Members from the Net Settlement Fund shall be calculated based on the following two steps. First, each Class Member shall be tentatively allocated a minimum payment of fifty dollars ($50). Second, the remainder of the Net Settlement Amount shall be tentatively allocated based on each Class Member's Qualifying Days Worked as reflected on Defendant's internal records as set forth in the Settlement Agreement.  Settlement Agreement, at 12:12-13:2.

**1.      Releases of Claims in Exchange for Settlement Payments**

Defendants continue to deny liability under any of Plaintiff's claims.  The settlement agreement provides that all Class Members who have not submitted a timely and valid request for exclusion, release the Defendant from the Class Member Released Claims within the Class Period.  Settlement Agreement, at 19:23-25.

**2.      Proposed *Cy Pres* Recipients and Disbursement Limitations**

The settlement <u>does not require any action</u> by class members in order to be sent a settlement check.  Settlement Agreement at 13:20-23.

Class members shall have ninety (90) days from the date their individual settlement payment checks are prepared to cash their settlement checks. Any checks that remain uncashed upon the expiration of that 90-day time period will be void, and shall revert to *cy pres*. The *cy pres* recipients shall be the San Francisco Parks Alliance and the California Bar Foundation (which shall split the *cy pres* amount equally). The Settlement Administrator shall distribute any *cy pres* payments. If a check is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall promptly attempt to obtain a valid mailing address by performing a skip trace search and, if another address is identified, shall mail the check to the newly identified address. If none is found, then said check shall revert to the *cy pres* recipient. Settlement Agreement at 13:11-20.

6

The Parties agree that the Settlement Agreement shall remain binding even if the Court does not approve the *cy pres* recipient(s) and/or the full amount of attorneys' fees, litigation costs, the full amount of the Service Enhancement Payment, PAGA payments, and/or Settlement Administration Costs. The Agreement shall remain binding with any such Court-ordered modification(s) and its terms will otherwise remain unchanged. Any reduction in the PAGA payment, Settlement Administration Costs, Plaintiff's attorneys' fees, litigation costs, and/or Service Enhancement Payment shall be added to the Net Settlement Amount.  Settlement Agreement, at 11:14-21.

The settlement provides for only one limitation on disbursement.  Defendant shall not be required to make any payment that is otherwise allocated to any individual who opts out of this lawsuit. The Parties expect that the number of opt outs and, correspondingly, any reduction in the amount distributed will be minimal: "Any portion of the Net Settlement Amount that would otherwise be paid to a Class Member who submits a valid request for exclusion from the settlement shall return to the possession of Defendant."  Settlement Agreement, at 13:8-10.

**C.**     **Class Notice; Proposed Procedures for Providing Notice and for Class Members' Responses**

Appointment of Settlement Administrator. The Parties agree to jointly utilize third-party Settlement Administrator Gilardi and Co., LLC to give notice of and communicate with Class Members regarding the Settlement.  Settlement Agreement, at 15:22-24.

Notice to Class Members:  Defendant will provide the names, last known address and telephone information, Social Security Numbers, and information regarding Qualifying Days Worked for members of the Class ("Class Data") to the Settlement Administrator. Defendant will provide the Class Data to the Settlement Administrator no later than ten (10) calendar days after the Date of Preliminary Approval. Class Data shall be used by the Settlement Administrator for the purpose of calculating settlement shares, notifying the Class Members of the Settlement, and tax reporting. The Settlement Administrator shall run the Class Data list through the National Change of Address database, and will use the most recent address for each Class Member — either from Defendant's records or the National Change of Address database — when mailing the

Class Notice. The Settlement Administrator shall also take reasonable steps to locate any Class Member whose Class Notice is returned as undeliverable.  Settlement Agreement, at 16:27-17:14.

Content of Notice:  Within ten (10) calendar days of receiving the Class Data list, the Settlement Administrator shall send via United States First Class Mail the Court-approved Notice of the Class Action Settlement, in a form substantially similar to that attached to the Settlement Agreement as Exhibit 1 to the Class Members. The Class Notice shall state the estimated Settlement Share that the Class Member will receive unless she or he opts out of the settlement. Settlement Agreement, at 17:15-19.

Right to Opt-Out.  Class Members shall have sixty (60) days from the date of mailing of the Class Notice to opt out of the lawsuit (the "Opt Out Period").  If the 60th day falls on a Sunday or holiday, the deadline to opt out will be the next business day that is not a Sunday or holiday.  Settlement Agreement, at 17:20-23.

Challenges to Class Member's Employment Data:  In calculating each individual Class Member's share of the settlement, Defendant's records regarding the employment tenure of Class Members shall be presumed to be correct. Class Members who challenge Defendant's records must submit a challenge in writing to the Settlement Administrator and will bear the burden of proof, e.g., a Class Member who fails to provide written documentation supporting a different number of Qualifying Days Worked will have his or her challenge denied. All such challenges must be received within the 60-day Opt Out Period.  Settlement Agreement, at 17:24-18:3.

Motion for Final Approval of Settlement:  Class Counsel shall file and serve their motion for final approval of this Settlement and motion for attorney's fees, litigation costs, and Service Enhancement Payment, along with all supporting evidence, no later than ten (10) calendar days after the conclusion of the Opt Out Period. Settlement Agreement, at 18:20-25.

Objections to Settlement:  All objections to the Settlement must be filed with the Court by no later than fourteen (14) calendar days following the conclusion of the Opt Out Period. Settlement Agreement, at 18:26-28.

No retaliation: Defendant understands its legal obligation not to retaliate against Settlement Class Members for their participation and/or election to participate in the

8

1
2
benefits to be afforded any of them by the settlement.  Settlement Agreement, at 21:23-25.

3      **D.      Proposed Procedures for Final Approval of Settlement**

4
The settlement agreement provides release of claims only after a final approval hearing,

5
also known as a fairness hearing, to provide final review and approval of the settlement. The

6
parties respectfully request that the Court schedule this hearing approximately 125 days after it

7
grants this motion for preliminary approval. The class notice will advise class members about the

8
fairness hearing and their opportunity to attend the hearing and make their views known.  At the

9
fairness hearing, the parties will address any issues raised by class members or the notice process

10
itself, and the Court will have a second opportunity to review the settlement in full.

11   **IV.   LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

12
13      **A.      Class Claims Settled Under Rule 23**

14           **1.      Criteria**

15
Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement of the claims

16
of a certified class is subject to the court's approval.  In the Ninth Circuit, settlement of class

17
actions is generally favored as a matter of "strong judicial policy." *Alberto* v. *GMRI, Inc.,* 252

18
F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268, 1276

(9th Cir. 1992)).

19
20
However, that principle is subject to certain limitations when the parties to a class action

21
agree to settle before a class is certified. To ensure that the proposed class is appropriate and

22
protect the interests of absent members of the class, courts are required to "pay" undiluted, even

23
heightened, attention "to class certification requirements" and consider whether the proposed

24
settlement "taken as a whole" "is fundamentally fair, adequate, and reasonable." *Staton* v. *Boeing*

25
*Co.,* 327 F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591,

26
620, 117 S. Ct. 2231 (1997) and quoting *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019, 1026

27
(9th Cir. 1998)). Thus, before it can approve the proposed settlement, the Court must determine

28
whether the class and subclasses satisfy all four criteria of Federal Rule of Civil Procedure 23(a)

and one prong of Rule 23(b). *Alberto* v. *GMRL, Inc.,* 252 F.R.D. at 659. In addition, the Court

9

must determine whether the proposed settlement terms are fair to the class as a whole, reasonable, and adequate. *Id.*

### 2.   Procedure

Procedurally, the reviewing court's evaluation is conducted in two stages. *Id.* at 658. At the first stage - the present stage, in this litigation - the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted). *See also* Manual for Complex Litigation (Fourth) § 21.632 (2004) ("Manual for Complex Litigation") (summarizing "preliminary fairness review").

Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it. *Id.* at 659 (citations omitted). At or after the fairness hearing, taking into account the responses of class members and any additional information gained about the appropriateness of certifying the settlement class and/or the terms of the settlement, the court reaches a final determination about whether the proposed settlement should be approved. *Id.* (citations omitted).

### B.   Standards for Class Settlement of FLSA Claims

Employee claims under the FLSA may not be settled without supervision of either the Secretary of Labor or a district court. The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness.

In reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation."... *Yue Zhou v. Wang's Rest.,* No. 05-279, 2007 U.S. Dist. LEXIS 60683, *2-4 (N.D. Cal. Aug. 8, 2007)

1

2   (citations omitted, brackets in original); *accord, Stevens v. Safeway Inc.,* No. 05-1988, 2008 U.S.

3   Dist. LEXIS 17119,*12-13 (C.D. Cal. Feb. 25, 2008).  The standard for approving a proposed

4   settlement of FLSA claims "is similar to that used in evaluating settlements under Rule 23(e)":

5   "the district court's role ... 'must be limited to the extent necessary to reach a reasoned judgment

6   that the agreement is not the product of fraud or overreaching by, or collusion between, the

7   negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to

8   all concerned. '" *Stevens v. Safeway Inc.,* 2008 U.S. Dist. LEXIS at *l3-14 (quoting *Officers for*

9   *Justice v. Civil Servo Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S.

10  1217,103 S.Ct. 1219 (1983)).

11  **V.    THE COURT SHOULD CERTIFY THE PROPOSED COLLECTIVE/CLASS FOR
       SETTLEMENT PURPOSES AND GRANT PRELIMINARY APPROVAL OF THE**
12     **PROPOSED CLASS SETTLEMENT**

13          **A.    Conditional Certification of the Class for Settlement Purposes is Warranted**

14          Plaintiff seeks certification of the collective action under the FLSA and certification of the

15  class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").[1]

16          In the Ninth Circuit, an FLSA collective action and a class action under Rule 23 may be

17  maintained in the same action. *See, e.g., Baas v. Dollar Tree Stores, Inc.,* No. 07-3108, 2007 U.S.

18  Dist. LEXIS 65979, at *13 (N.D. Cal. Aug. 29, 2007) (citing cases); *accord, Thorpe v. Abbott*

19  *Labs., Inc.,* 534 F. Supp. 2d 1120, 1123-25 (N.D. Cal. 2008) (citing additional cases).

20                  **1.    The Class and Subclasses Satisfy Rule 23(a) and 23(b)(3)**

21          To facilitate the proposed settlement, Plaintiff respectfully requests that the Court

22  conditionally certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  As

23  discussed above, for this purpose, the Court must determine whether the proposed class and

24  subclasses satisfy all four criteria of Rule 23(a) and one prong of Rule 23(b). *See Alberto* v.

25  *GMRL, Inc.,* 252 F.R.D. at 659. Here, all these criteria are met.

26                  **a.    All four criteria of Rule 23(a) are met**

27  _____

28  [1] The Parties stipulate to the conditional certification of the class *for settlement purposes only* and
    further agree that this stipulation class shall not be construed as an admission or
    acknowledgement of wrongdoing of any kind or that any class should be certified or given
    collective action treatment other than for purposes of effectuating the agreed-to settlement.

1

2

### (1) The numerosity requirement is met

3

"As a general rule, classes numbering greater than forty individuals satisfy the numerosity

4

requirement." *Quintero* v. *Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607,

5

2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted).  The numerosity

6

criterion is plainly satisfied where, as here, the number of class members is in the hundreds.

7

### (2) The commonality requirement is met

8

The commonality requirement is construed liberally in the Ninth Circuit. *Alberto* v.

9

*GMRI, Inc.,* 252 F.R.D. at 660 (citation omitted); *see also Hanlon,* 150 F.3d at 1019 (Rule

10

23(a)(2) construed "permissively"). The class members' claims must share some substantial

11

issues of law or fact, but need not be identical. *Quintero,* 2008 U.S. Dist. LEXIS 84976, at *8.

12

Either "shared legal issues with divergent factual predicates" or "a common core of salient facts

13

coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d

14

at 1019.

15

Here, all class members are operators, currently or formerly working for Defendant. This

16

situation presents a host of common factual and legal questions (under federal and California law)

17

that numerous other wage and hour decisions recognize as satisfying the commonality criterion.

18

These questions include, for example, whether the class members are paid through a common

19

compensation program or payroll system; whether Defendant determined the hours that its

20

employees actually spent doing compensable work; whether the workers were properly paid

21

overtime; and whether Defendant failed to provide accurate itemized wage statements. *See, e.g.,*

22

*In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1062-63 (N.D. Cal.

23

2007); *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602,607 (C.D. Cal. 2005). Thus, the

24

commonality criterion is met.

25

### (3) The typicality requirement is met

26

Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327

27

F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied if the representatives' claims are

28

"'reasonably coextensive with those of absent class members; they need not be substantially

identical. '"*Id.* Here, the named Plaintiff formerly worked as an operator for Defendant and seeks to represent a class where all members allege wage and hour violations based on a common nucleus of facts and a common core of wage and hour claims. Thus, the typicality requirement is met.

### (4) The adequacy requirement is met

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiffs or their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Here, neither the named Plaintiff nor his counsel have interests antagonistic to those of other class members. To the contrary, the named Plaintiff shares with absent class members an interest in recovering compensation that Defendant is alleged to have denied them.  In addition, the named Plaintiff retained counsel with extensive experience in wage and hour class actions, as well as class action litigation more generally, who have pursued this litigation over the past two years, expending considerable energy on investigating facts, both before and after the complaint was filed, and asserting legal arguments and authorities. (Tidrick Decl., ¶ 19) The proposed settlement was reached only after two separate arm's-length mediation sessions and subsequent efforts by the second mediator, Mark Rudy, Esq. to resolve this matter.  Thus, the adequacy requirement is also met here.

### b. The criteria of Rule 23(b)(3) are met

To certify a class under Rule 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both criteria are met here.

### (1) The predominance requirement is met

The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can

13

be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) *("Local Joint Executive Bd.")* (quoting *Hanlon,* 150 F.3d at 1022).

As in numerous other wage and hour class actions, the fact that this litigation arises from Defendant's uniform policies regarding the compensation of its operators strongly supports a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068 ("it is manifestly disingenuous for a company to treat a class of employees as a homogeneous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation."); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009) (uniform corporate policies detailing duties and responsibilities of a job position will often bear heavily on questions of predominance and superiority and may carry great weight).

### (2) The superiority requirement is met

Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.,* 231 F.R.D. at 614.

This case involves multiple claims, some for relatively small individual sums. If the putative class members cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve. *Local Joint Executive Bd.,* 244 F.3d at 1163.  In such a situation, the Ninth Circuit found, the superiority requirement was "easily satisfied." *Id.*  The same holds true here.

### 3.       The FLSA Claims Warrant Certification as a Collective Action

To facilitate the proposed settlement, Plaintiff also respectfully requests that the Court conditionally certify a collective action under FLSA pursuant to 29 U.S.C. § 216(b). For this purpose, the Court must determine whether the proposed collective action is "similarly situated"

14

within the meaning of 29 U.S.C. § 216(b). As discussed above, all class members are operators, currently or formerly working for Defendants. This situation presents a host of common factual and legal questions (under federal and California law) that numerous other wage and hour decisions recognize as satisfying the commonality criterion. These questions include, for example, whether the class members are paid through a common compensation program or payroll system; whether Defendants determined the hours that its employees actually spent doing compensable work; whether the workers were properly paid overtime; and whether Defendants failed to provide accurate itemized wage statements. See, e.g., *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602,607 (C.D. Cal. 2005). Thus, all members of the collective action are similarly situated.

### B.      The Proposed Settlement Is Fair, Reasonable, and Adequate

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows:

Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. *Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing

notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003). *See also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321. The settlement proposed here meets all three criteria.

### 1. The Settlement Is Fair

#### a. Fairness of distribution among class members

The proposed settlement is fair, in that class members' benefits are determined on a pro rata basis calculated based on the number of days during the Class Period during which the class member performed work for Defendant as a bus operator or in an equivalent position in California. Furthermore, the proposed settlement would release only participating class members' wage and hour claims, not all potential employment claims, in exchange for the financial benefits they receive.

#### b. Fairness of proposed attorneys' fees

The allocation of total settlement funds between class members and the attorneys is also fair, in that the settlement agreement provides for Plaintiffs' counsel to seek no more than one-fourth (25%) of the total settlement payment in fees.

The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are in line with other attorneys' fees awards in California for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several thousand dollars.

The Ninth Circuit has recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. (*Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." (*Id.*)

16

1

2  Accordingly, under Ninth Circuit law, the district court has discretion in common fund cases to

3  choose either the percentage-of-the-fund or the lodestar method.  (*In re Wash. Pub. Power Supply*

4  *Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994).

5        Several courts have expressed frustration with the alternative "lodestar" approach for

6  deciding fee awards, which usually involves wading through voluminous and often

7  indecipherable time records.  Commenting on the loadstar approach, Chief Judge Marilyn Hall

8  Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989):

9        This court is compelled to ask, "Is this process necessary?"  Under a cost-benefit analysis,
       the answer would be a resounding, "No!"  Not only do the <u>Lindy Kerr-Johnson</u> analysis

10      consume an undue amount of court time with little resulting advantage to anyone, but in
       fact, it may be in the detriment of the class members.  They are forced to wait until the

11      court has done a thorough, conscientious analysis of the attorneys' fees petition.  Or, class
       members may suffer a further diminution of their fund when a special master is retained

12      and paid from the fund.  Most important, however, is the effect the process has on the
       litigation and the timing of settlement.  Where attorneys must depend on a lodestar

13      approach, there is little incentive to arrive at an early settlement.

14  *Id.* at 1375.

15        The percentage approach is preferable to the lodestar because:  (1) it aligns the interests of

16  class counsel and absent class members; (2) it encourages efficient resolution of the litigation by

17  providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on

18  judicial resources.  *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79.)  The Ninth

19  Circuit now routinely uses the percentage of the common fund approach to determine the award

20  of attorneys' fees.  *See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79

21  (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).)

22        Class counsels' anticipated application for one-fourth (25%) of the Settlement Funds is

23  within the range of reasonableness.  Historically, courts have awarded percentage fees in the

24  range of 20% to 50% of the common fund, depending on the circumstances of the case.

25  Newberg on Class Actions § 14:6 (4th ed. 2008); see also *In re Activision Securities*

26  *Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

27        No general rule can be articulated on what is a reasonable percentage of a common fund.

28  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in

order to assure that the fees do not consume a disproportionate part of the recovery obtained for

17

the class, although somewhat larger percentages are not unprecedented.  NEWBERG, § 14:6.

Accordingly, the attorneys' fees that will be sought in this case are fair and reasonable.

### c. Fairness of proposed "enhancement" awards for Named Plaintiff

The principle of fairness is also well served by the $4,000 enhancement payment that will

be proposed for the named Plaintiff.  Mr. Armstrong provided invaluable assistance to Plaintiffs'

attorneys in explaining Defendant's compensation policies, locating witnesses, reviewing

documents, and providing information to assist in the settlement negotiations.   Further, Mr.

Armstrong incurred personal risk in bringing this lawsuit on behalf of the other persons in the

class.  *Id. See*, *e.g., Koehl* v. *Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action

where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for

defendant's attorneys' fees).

The court has discretion to award incentive or service awards to compensate plaintiffs

for work done on behalf of the class and in consideration of the risk undertaken in bringing

the action.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Courts

often assess the reasonableness of the award by taking into consideration: "(1) the risk to the

class representative in commencing a suit, both financial and otherwise; (2) the notoriety and

personal difficulties encountered by the class representative; (3) the amount of time and effort

spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit

(or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*

*v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving incentive award

of fifty thousand dollars ($50,000)).  In this district, an incentive award of five thousand

dollars ($5,000) is presumptively reasonable. *See Pierce,* 2013 U.S. Dist. LEXIS 138921,

2013 WL 5402120, at *6 (citations omitted).

Enhancement award serve a function more than just reimbursement for time; they are

to overcome the fear of reprisal, real or perceived. *See, e.g., Rodriguez,* 563 F.3d at 958-59

(such awards "are intended to compensate class representatives for work done on behalf of [a]

class, to make up for financial or reputational risk undertaken in bringing the action, and,

sometimes, to recognize their willingness to act as a private attorney general"), vacated on

18

other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  Courts should consider "'the risk to the class representative in commencing suit, both financial and otherwise,'" as well as "'the amount of time and effort spent by the class representative.'"  *Smith*, 2013 WL 163293 at *6.

The award of $4,000 that will be requested here for the named Plaintiff is appropriate for his efforts bringing and prosecuting this case.  Incentive awards are particularly appropriate here, in the context of an employment class action, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." *Campbell v. First Investors Corp.*, 2012 WL 5373423, at *8 (S.D. Cal. Oct. 29, 2012).

### 2. The Settlement Is Reasonable

If Plaintiff was to prevail on liability at trial, then the amount of damages awarded could fall within a wide range, based on the number of compensable hours at issue, the statute of limitations, the potential punitive damages, among other factors.  For example, if Defendant (1) convinced the finder of fact that Plaintiffs did not work during the alleged uncompensated time and/or that such time was not compensable; (2) eliminated the third year of the statute of limitations by establishing any violation was not willful; and (3) avoided punitive damages, the total damages for the class members would likely be much smaller than the agreed upon settlement amount.  If, on the other hand, Plaintiff convinced the finder of fact that class members were entitled to many hours per week of overtime pay, was successful in obtaining a three year statute of limitations, and obtained punitive damages, the total damages for the class would be much higher than the agreed upon settlement amount.

Because the variables in an FLSA damage analysis cause the numbers to vary so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in an FLSA case such as this one.  At $150,000.00 overall, the proposed settlement is clearly substantial.  This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands.  Instead, class members are eligible to recover significant financial benefit.  These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.  This conclusion is reinforced by considering such factors as the risk that a class might not be

19

certified or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings.

In light of Plaintiffs' counsel's analysis of the estimated value of the strongest claims applicable to all class members, as described in detail in the accompanying declaration of counsel, the gross settlement amount of $150,000 is adequate and reasonable.  *See* Tidrick Decl. ¶¶ 15-18.

While Class Counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months, even years. (*Id.*,¶ 17.)  Having reviewed numerous documents, and having extensively investigated and researched the pivotal legal and factual issues, counsel for the parties, experienced class action litigators well versed in wage and hour law, arrived at a reasonable resolution through a protracted and arm's-length mediation and negotiation process, which continued into all details of the settlement agreement and the proposed class notice.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971).

The policy that favors settlement of class actions and other complex cases applies with particular force here.  Employment cases, and specifically wage and hour cases, are expensive and time-consuming.  That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement.  Inevitably, the certification process alone would add time and expense to the litigation process. The settlement, on the other hand, provides to all class members substantial relief, promptly and efficiently.  The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst* v. *Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also* 4 Newberg on Class Actions § 11.41 (citing cases).

20

The resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3. The Settlement Is Adequate

In an analogous class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.,* 244 F.3d at 1163.

The recovery provided through the settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes..,. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney* v. *Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever. *See City of Detroit* v. *Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero. Consequently, the $150,000 settlement satisfies the criterion of adequacy. *See* Manual for Complex Litigation § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process. ").

### 4. The Effect of Opt-Outs and *Cy Pres* Provisions Are Reasonable.

This Court has "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). The court may choose a *cy pres* distribution, escheat to the government,

21

1

2   and reversion to defendants.  *Id.*  While reversions are generally disfavored, in this case the

3   settlement <u>does not require any action</u> by class members in order to be sent a settlement check.

4   Settlement Agreement at 13:20-23.  If a check is returned to the Settlement Administrator as

5   undeliverable, the Settlement Administrator shall promptly attempt to obtain a valid mailing

6   address by performing a skip trace search and, if another address is identified, shall mail the

7   check to the newly identified address. If none is found, then said check shall revert to the *cy pres*

8   recipients.  Settlement Agreement at 13:11-20.  The reversion to the Defendant, if any, would be

9   minimal,  would be limited to the amount that would have been allocated to any Class Members

10  who opt out, and is expected to be minimal: "Any portion of the Net Settlement Amount that

11  would otherwise be paid to a Class Member who submits a valid request for exclusion from the

12  settlement shall return to the possession of Defendant."  Settlement Agreement, at 13:8-10.

13      The *cy pres* recipients shall be the San Francisco Parks Alliance and the California Bar

14  Foundation (which shall split the *cy pres* amount equally). The Parties agree that the Settlement

15  Agreement shall remain binding even if the Court does not approve the *cy pres* recipient(s) and/or

16  the full amount of attorneys' fees, litigation costs, the full amount of the Service Enhancement

17  Payment, PAGA payments, and/or Settlement Administration Costs. The Agreement shall remain

18  binding with any such Court-ordered modification(s) and its terms will otherwise remain

19  unchanged. Any reduction in the PAGA payment, Settlement Administration Costs, Plaintiff's

20  attorneys' fees, litigation costs, and/or Service Enhancement Payment shall be added to the Net

21  Settlement Amount.  Settlement Agreement, at 11:14-21.

22                      **5. The Payment to the LWDA Is Reasonable.**

23      This Court has discretion with regard to approval of the amount to be allocated for

24  payment to the California Labor & Workforce Development Agency (LWDA) in connection with

25  settlement of the PAGA claims.  *See, e.g., Nordstrom Commission Cases*, 186 Cal. App. 4th 576

26  (2010) ("We conclude the trial court did not abuse its discretion in approving a settlement which

27  does not allocate any damages to the PAGA claims.").  In this case, the settlement's allocation of

28  payment of $1,000 in connection with settlement of the PAGA claims (75% of which shall be

paid to the LWDA and 25% of which shall be paid to the Settlement Class members as part of the

Net Settlement Amount) reflects a reasonable valuation of the PAGA claims relative to the other claims in the suit.

## VI.   THE COURT SHOULD CONDITIONALLY APPROVE THE SETTLEMENT AGREEMENT, RELATED FORMS, AND PROPOSED PROCEDURES FOR PROVIDING NOTICE TO THE CLASS, AND SHOULD SET A FINAL "FAIRNESS" HEARING AND BRIEFING SCHEDULE

Based on the above information and authorities, Plaintiff proposes that the Court grant preliminary approval of the proposed settlement agreement for purposes of notifying members of the potential class about its terms and about their options for responding about and participating in the settlement.  Preliminary approval of the proposed settlement also encompasses approving the form of class notice, and specifically approving the time line and related procedures for administration of the class notice and preparation for the final approval hearing.

The notice is designed to advise class members both clearly and accurately about the key terms of the proposed settlement.  The notice explains how to object or opt out; and the consequences of the action the class member takes or does not take, in terms of both financial benefit and release of claims. The notice advises class members about the final approval hearing, their rights with respect to that hearing, and how to get more information.

The proposed time frames for returning them is reasonable, allowing class members to digest the information in the notice and obtain answers to questions before deciding on the action they want to take.

Accordingly, Plaintiff respectfully asks that the Court approve the settlement agreement and the proposed notice in substantially the format presented with this motion; authorize the administrator to distribute these documents to the class members by first class mail; and adopt the proposed time line for distribution of notice, exclusions, and objections, the schedule for the final approval hearing, and the briefing schedule ahead of that hearing. To facilitate settlement, Plaintiff further requests that the Court preliminarily designate their attorneys of record as Class Counsel, and designate the named Plaintiff as conditional Class Representative, as provided for in the settlement agreement.

1

2

## VII.   CONCLUSION

Based on the information and reasons provided above and in the accompanying documents, Plaintiff respectfully requests that the Court: (1) grant conditional certification, for settlement purposes, of the class and collective action identified herein; (2) grant preliminary approval of the proposed $150,000 settlement as set forth in the settlement agreement; (3) for purposes of facilitating class settlement, designate Plaintiff's attorneys as Class Counsel and Plaintiff as the Class Representative; (4) approve Gilardi & Co. LLC as the settlement administrator; (5) authorize mailing of the proposed notice pursuant to the settlement agreement; (6) schedule the final approval hearing for approximately 125 days from the preliminary approval; and (7) give a determination that the date on which the Court grants preliminary approval of the Settlement is the date that the Settlement is deemed filed for purposes of providing notice to the appropriate officials pursuant to 28 U.S.C. § 1715.

DATED: April 17, 2015                         Respectfully submitted,

THE TIDRICK LAW FIRM

By:   /s/ Steven G. Tidrick
      _____
      STEVEN G. TIDRICK, SBN 224760

      Attorneys for Individual and Representative
      Plaintiff RORY ARMSTRONG