1  THE TIDRICK LAW FIRM
   STEVEN G. TIDRICK, SBN 224760
2  2039 Shattuck Avenue, Suite 308
   Berkeley, California 94704
3  Telephone: (510) 788-5100
   Facsimile:  (510) 291-3226
4  E-mail:     sgt@tidricklaw.com

5  Attorneys for Individual and Representative
   Plaintiff RORY ARMSTRONG
6

7                UNITED STATES DISTRICT COURT

8                NORTHERN DISTRICT OF CALIFORNIA

9                   UNLIMITED JURISDICTION

10

11 | RORY ARMSTRONG, on behalf of herself | Civil Case Number: CV 13-02691 MMC |
   | and all others similarly situated, | |
12 | | **DECLARATION OF STEVEN G.** |
   | Plaintiff, | **TIDRICK, ESQ. IN SUPPORT OF** |
13 | | **PLAINTIFF'S MOTION FOR** |
   | v. | **PRELIMINARY APPROVAL OF CLASS** |
14 | | **SETTLEMENT** |
   | BAUER'S INTELLIGENT | |
15 | TRANSPORTATION, INC.; and DOES 1-50, | Date:       May 22, 2015 |
   | Defendants. | Time:       9:00 A.M. |
16 | | Courtroom: 7, 19th Floor, San Francisco |
17 | | The Honorable Maxine M. Chesney |

1

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

I, Steven G. Tidrick, do declare and state as follows:

1.      I am an attorney with The Tidrick Law Firm, attorneys of record for Plaintiff in the above-entitled action.  I am licensed to practice before all of the courts of the States of California and Massachusetts, and various federal courts including the Northern District of California.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2.      On March 29, 2013, Plaintiff Rory Armstrong filed a lawsuit against Defendant in the Superior Court for the State of California, in and for the County of San Francisco, Case Number CGC-13-530147, and subsequently filed an amended complaint on May 13, 2013, alleging a variety of violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., the California Labor Code, the California Business and Professions Code, the California Industrial Welfare Commission Order No. 9-2001, and the San Francisco Administrative Code, including: failure to pay wages, failure to provide meal and rest periods, failure to pay for all work time including examination time, turn-in time, inspection time, meeting time, gap time, and overtime, failure to pay minimum wages, failure to timely pay wages, during employment and following termination, failure to properly distribute gratuities, failure to provide accurate wage statements, failure to maintain accurate employment records, violation of Business And Professions Code § 17200, and claims under PAGA.  On or about June 11, 2013, Defendant filed an answer to the Complaint, denying all claims alleged therein. On or about June 12, 2013, Defendant removed the Action to the U.S. District Court for the Northern District of California, where it is presently assigned case number 3:13-cv-02691-MMC.  Plaintiff alleges in his Complaint that, during the applicable limitations period, Defendant failed to pay its California hourly employees all wages due, failed to provide meal and rest periods, failed to pay all work time including overtime, failed to pay minimum wages, failed to timely pay wages during employment and following termination, failed to properly distribute gratuities, failed to provide accurate wage statements, and failed to maintain accurate employment records.

3.      Defendant denies Plaintiff's claims. Defendant does not believe that any liability to Plaintiff or Class Members exists, or that Plaintiff or Class Members are entitled to any

recovery. In addition, Defendant contends that Plaintiff's claims are not suitable for class or representative action treatment.

4. The parties exchanged Rule 26 initial disclosures and exchanged substantial discovery, including copies of relevant employee handbooks and policies, and data and documents related to the size of the proposed class, the number, timing, and frequency of transportation services performed by Plaintiff and other members of the putative class, and the damages alleged against Defendant. Defendant also provided Plaintiff with substantial information on the wage rates paid to Class Members, wage statements, and other documentation.

5. The Parties first participated in mediation on February 6, 2014 with Richard S. Whitmore, an experienced mediator with nearly forty years' experience. The mediation was not successful. Following the mediation, the Parties continued to develop and litigate their positions. Specifically, the parties contested conditional certification of a class from April to July 2014 (*See, inter alia,* Docket Nos. 31, 35, 36). The Parties further disputed the scope of permissible discovery, which disputes were only resolved following judicial intervention. (*See, e.g.,* Docket No. 48.) In the course of and following these disputes and others, the Parties exchanged further information and arguments that allowed each side to re-evaluate and refine their respective positions.

6. On January 21, 2015, the Parties participated in a full-day mediation with respected class action mediator Mark S. Rudy, Esq. in San Francisco, California. No agreement was reached at the mediation to resolve the matter. However, in the weeks following the mediation, Mr. Rudy continued working with the Parties until the Parties agreed to the basic terms of a settlement on or about February 20, 2015. Thereafter the Parties diligently albeit contentiously worked to draft a full settlement agreement. All of the terms of the Parties' settlement are contained within the Joint Stipulation of Settlement and Release and the attachment thereto, entitled Notice of Class Action Settlement, filed April 10, 2015 ("Settlement Agreement") (Docket No. 57). At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

3

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

1      7.     The fully executed class settlement was filed on April 10, 2015, and attached thereto is the proposed class notice (Docket No. 57) ("Settlement Agreement").  The proposed Settlement Agreement is made and entered into by and between Plaintiff RORY ARMSTRONG, as an individual and as representative of the Class ("Plaintiff" or "Class Representative"), and Defendant Bauer's Intelligent Transportation, Inc. ("Defendant"), subject to approval and confirmation by the Court.

      8.     Under the Settlement Agreement, Defendant shall pay an amount not to exceed One Hundred Fifty Thousand U.S. Dollars ($150,000) as the Maximum Settlement Amount to resolve the Action on a class-wide basis.  Settlement Agreement, at 8:5-7.  As described more fully below, netting out costs of administering the settlement, which have been estimated at $15,000, Plaintiffs' attorneys' fees of up to twenty five percent (25%) of the Maximum Settlement Amount, ($37,500) and reimbursement of reasonable litigation expenses not to exceed  $12,000, a Service Enhancement Payment to the Class Representative in the gross amount of $4,000, and an allocation of payment for claims for penalties under the PAGA of $1,000, 75% of which shall be paid to the LWDA and 25% of which shall be paid to the Settlement Class members as part of the Net Settlement Amount, the Net Settlement Amount will be distributed to all Class Members who do not exclude themselves from the settlement.  Settlement Agreement, at 10:5-11:21.  The overall settlement class is as follows:

> *All current and former employees of Bauer's Intelligent Transportation, Inc. who worked in the State of California and were employed as a bus operator or in an equivalent position at any time within the Class Period, i.e., the time period from March 29, 2009 through the Date of Preliminary Approval.*

Settlement Agreement, at 2:6-8, 3:24-25.  Settlement payments to Class Members from the Net Settlement Fund shall be calculated based on the following two steps. First, each Class Member shall be tentatively allocated a minimum payment of fifty dollars ($50). Second, the remainder of the Net Settlement Amount shall be tentatively allocated based on each Class Member's Qualifying Days Worked as reflected on Defendant's internal records as set forth in the Settlement Agreement.   Settlement Agreement, at 12:12-13:2.   The settlement agreement

4

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

provides that all Class Members who have not submitted a timely and valid request for exclusion, release the Defendant from the Class Member Released Claims within the Class Period.  Settlement Agreement, at 19:23-25.

9. The settlement <u>does not require any action</u> by class members in order to be sent a settlement check.  Settlement Agreement at 13:20-23.

10. Class members shall have ninety (90) days from the date their individual settlement payment checks are prepared to cash their settlement checks. Any checks that remain uncashed upon the expiration of that 90-day time period will be void, and shall revert to *cy pres*. The *cy pres* recipients shall be the San Francisco Parks Alliance and the California Bar Foundation (which shall split the *cy pres* amount equally). The Settlement Administrator shall distribute any *cy pres* payments. If a check is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall promptly attempt to obtain a valid mailing address by performing a skip trace search and, if another address is identified, shall mail the check to the newly identified address. If none is found, then said check shall revert to the *cy pres* recipient.  Settlement Agreement at 13:11-20.

11. The Parties agree that the Settlement Agreement shall remain binding even if the Court does not approve the *cy pres* recipient(s) and/or the full amount of attorneys' fees, litigation costs, the full amount of the Service Enhancement Payment, PAGA payments, and/or Settlement Administration Costs. The Agreement shall remain binding with any such Court-ordered modification(s) and its terms will otherwise remain unchanged. Any reduction in the PAGA payment, Settlement Administration Costs, Plaintiff's attorneys' fees, litigation costs, and/or Service Enhancement Payment shall be added to the Net Settlement Amount.  Settlement Agreement, at 11:14-21.

12. The settlement provides for only one limitation on disbursement.  Defendant shall not be required to make any payment that is otherwise allocated to any individual who opts out of this lawsuit. The Parties expect that the number of opt outs and, correspondingly, any reduction in the amount distributed will be minimal: "Any portion of the Net Settlement Amount that would otherwise be paid to a Class Member who submits a valid request for exclusion from

5

the settlement shall return to the possession of Defendant." Settlement Agreement, at 13:8-10.

13. All of the terms of the Parties' settlement are contained within the Joint Stipulation of Settlement and Release. (Docket No. 57). There are no undisclosed side agreements between Class Counsel and Defendants' Counsel.

14. The Parties concur that sufficient discovery has been conducted to evaluate the strengths and weaknesses of their respective claims and defenses and to recommend this Settlement to the Class and the Court.

15. Because the variables in an FLSA damage analysis cause the numbers to vary so widely, it is often difficult to pinpoint a realistic "potential recovery" in an FLSA case such as this one. At $150,000.00 overall, the proposed settlement is clearly substantial. This is not a settlement where the aggregate figure is large simply because the size of the class is in the tens or hundreds of thousands. Instead, class members are eligible to recover significant financial benefit. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval. This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings.

16. With regard to the categories of time that Plaintiff's counsel considered to be the strongest claims applicable to all class members, Plaintiff's counsel has estimated approximate total unpaid straight time of approximately $223,000 classwide. That amount is the sum of estimates of $94,000 for post-trip inspection time, $78,000 for turn-in time, $28,000 for medical examination time, and $23,000 for mandatory meetings, and does not include overtime. That amount also does not include sums for Labor Code 203 penalties, rest break claims, or amounts for time spent waiting between shifts, which for settlement discussion purposes was determined to be too speculative to factor into the negotiated amount. The assumptions underlying the above estimates were an hourly rate of $17.00, and numbers of medical examinations and meeting time amounts are based on information obtained through interviews with drivers and data produced by Defendant. All of these estimates assume, of course, that Plaintiffs prevail on all aspects of

6

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

liability, which Defendant contests. Defendant produced substantial evidence and legal authority in opposition to all of these claims. A verdict for Defendant would, of course, mean zero recovery for Plaintiffs.

17. While we believe that Plaintiff's claims are meritorious, as experienced class action litigators, we understand that the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many more months, even years.

18. In light of the analysis above, including the above-referenced estimated value of the strongest claims applicable to all class members, specifically, total unpaid straight time of $223,000, and taking into account Defendant's defenses for those claims, the gross settlement amount of $150,000 is adequate and reasonable.

19. The Settlement Agreement provides for a final "fairness" hearing to provide final review and approval of the settlement. The parties respectfully request that the Court schedule this hearing approximately 125 days after it grants this motion for preliminary approval. The class notice will advise class members about the fairness hearing and their opportunity to attend the hearing and make their views known. At the fairness hearing, the parties will address any issues raised by class members or the notice process itself, and the Court will have a second opportunity to review the settlement in full.

20. The Tidrick Law Firm regularly engages in major complex litigation, and has extensive experience in wage and hour class action lawsuits that are similar in size, scope, and complexity to the present case. The named Plaintiff retained counsel with extensive experience in wage and hour class actions, as well as class action litigation more generally, who have pursued this litigation over the past two years, both before and after the complaint was filed on March 29, 2013, expending considerable energy on investigating facts and asserting legal arguments and authorities. Prior to and throughout the duration of this litigation, The Tidrick Law Firm has diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in this action, and have successfully negotiated the settlement of this matter to the benefit of the proposed class.

21. The parties agreed upon Gilardi & Co. LLC, a reputable class action claims

7

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

administrator, to serve as claims administrator, after it provided the lower of the two bids provided by reputable class action claims administrators agreeable to both sides.

22. This Court has discretion with regard to approval of the amount to be allocated for payment to the California Labor & Workforce Development Agency (LWDA) in connection with settlement of the PAGA claims. *See, e.g., Nordstrom Commission Cases*, 186 Cal. App. 4th 576 (2010) ("We conclude the trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims."). In this case, the settlement's allocation of payment of $1,000 in connection with settlement of the PAGA claims (75% of which shall be paid to the LWDA and 25% of which shall be paid to the Settlement Class members as part of the Net Settlement Amount) reflects a reasonable valuation of the PAGA claims relative to the other claims in the suit.

23. Based on my experience, and taking into consideration the risks of continued litigation, including appeals, versus the certain and substantial relief afforded by the Settlement Agreement, it is my opinion that the Settlement Agreement is fair, adequate, and reasonable, in the best interest of the Class, and merits preliminary approval by this Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 17, 2015.

/s/ Steven G. Tidrick

_____
STEVEN G. TIDRICK, ESQ.

8

**DECLARATION OF STEVEN G. TIDRICK, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**